NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINWOOD TRADING LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> E.S. RECYCLING EXPRESS CORPORATION, et al., <br><br> *Defendants*. | Civil Action No. 14-6332 <br><br> OPINION |

**THIS MATTER** comes before the Court on Plaintiff Linwood Trading LTD d/b/a TMG Metal's ("Plaintiff" or "TMG") revised motion for default judgment against E.S. Recycling Express Corporation ("ES"); ESR Scrap Metal Recycler, individually and as the d/b/a of E.S. Recycling Express Corporation (individually referred to as "ESR"); and SGR Metal, Inc. ("SGR") (together, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 48. For the reasons set forth herein, the motion is **GRANTED** in part and **DENIED** in part.

I. **BACKGROUND**

Plaintiff TMG is a New Jersey corporation with its principal place of business in Fort Lee, New Jersey. Second Amended Complaint ("SAC") ¶ 1, Dkt. No. 28. Defendant E.S. Recycling Express Corporation has its principal office and place of business in Orlando, Florida. Id. ¶ 2. Defendant ESR Scrap Metal Recycler also has its principal office and place of business in Orlando, Florida. Id. ¶ 3. Defendant SGR Metal, Inc. has its principal office and place of business in

1

Twinsburg, Ohio. Id. ¶ 4.[1]

TMG is a scrap metal broker that arranges for the shipment of scrap metal from the United States to its customers, who are predominantly located in eastern Asia. Id. ¶ 9. Defendants are suppliers of scrap metal. Id. ¶ 10. Defendants solicited business from TMG by sending communications to TMG's offices in Fort Lee, New Jersey. Id. ¶ 11. At some point, Mr. Lee, the president of TMG, met Mr. Ho and Mr. Tang in China. Id. ¶ 12. During that meeting, Mr. Ho and Mr. Tang advised Mr. Lee that Mr. Ho was the president of Defendants and that Mr. Tang assisted him with operations in Ohio. Id.

At all times, it was represented to TMG that ES, ESR, and SGR were the same company and business, and were all owned and operated by Mr. Ho. Id. ¶ 13. Written and electronic communications from ES and ESR employees were often copied to representatives of SGR, and vice versa. Id. ¶ 14. On many occasions, when TMG entered into transactions with ES and ESR, the companies directed TMG to make payments to SGR. Id. ¶ 15. In addition, Rita Chen and other employees of Defendants would frequently call TMG's employees at its office in Fort Lee to discuss issues related to the transactions. Id. ¶ 16. At times, Ms. Chen identified herself through email as an employee of ES, and at other times an employee of SGR. Id.

Defendants represented to TMG that each entity was involved at different times and for different aspects of the same transactions. Id. ¶ 17. Defendants never specified which entity would be the actual source of goods purchased. Id. In some instances, Defendants would purchase product from a third-party scrap yard and supply it to TMG. Id. ¶ 18. On at least two occasions, Defendants purchased product from a scrapyard or scrapyards located in the Newark, New Jersey

---

[1] Although the initial Complaint and First Amended Complaint contained allegations against ES Electronic & Metal Management, Inc., see Dkt. Nos. 1, 4, the SAC does not.

2

area and Defendants had the product delivered to and shipped out of the Port of Newark or Elizabeth. Id. ¶ 19. The freight forwarding company utilized by Defendants to transport the product from scrapyards to ports was Concatt Enterprises, a New Jersey company located in West Windsor, New Jersey. Id. ¶ 20.

TMG alleges that it placed eighteen Purchase Orders with Defendants between October 15, 2013 and June 4, 2014 (the "Purchase Orders"). Id. First Count, ¶ 2.[2] These Purchase Orders set forth numerous types of quality scrap metal that TMG was required to purchase from Defendants, as well as the amount of product, price of product, and other terms. Id. The Purchase Orders were prepared by TMG in its Fort Lee, New Jersey office, addressed to E.S. Recycling Express Corporation, and sent to the email esrmetal.com. Id. ¶ 3. For each of the eighteen transactions, Defendants provided TMG with an invoice in the name of ESR Metal Recycler and a packing list setting forth the exact amount of the product being shipped by Defendants, a description of the product, and the terms of payment and shipping. Id. ¶ 4. TMG paid Defendants the entire amount requested by Defendants for the eighteen transactions. Id. ¶ 5. In anticipation of receipt of the product, TMG also secured shipping containers and a shipping company to ship the product to its customer. Id. ¶ 6.

Plaintiff alleges that in breach of the parties' agreements, Defendants provided a substantial amount of product that was contaminated with impermissible levels of impurities and therefore, could not be used for its intended purpose. Id. ¶ 7. In addition, Defendants supplied TMG with less product than represented in invoices and packing lists, and less than what TMG had contracted and paid for. Id. ¶ 8. Between December 2013 and August 2014, TMG submitted claims for

---

[2] The SAC restarts its numbering for each cause of action, so the Court will denote the count and paragraph for each relevant citation.

impurities and shortages to Defendants.  Id. ¶ 9.  TMG also submitted claims for monies TMG had to remit to a container owner for damages done to a container from oil improperly contained in and leaking from product shipped by Defendants.  Id. ¶ 10.  To date, Defendants have not paid any portion of TMG's claims.  Id. ¶¶ 11-13.  Plaintiff further alleges that Defendants have refused to return tens of thousands of dollars in overpayments.  Id. Fifth Count, ¶¶ 2-5.

On October 13, 2014, Plaintiff filed a Complaint against Defendants ESR and SGR.  Dkt. No. 1.  On October 22, 2014, Plaintiff filed a First Amended Complaint, also against ESR and SGR.  Dkt. No. 4.  After ESR and SGR failed to timely respond to the First Amended Complaint, Plaintiff requested the entry of default, which the Clerk entered on February 18, 2015.  Dkt. Nos. 7-8.  On February 25, 2015, Plaintiff moved for default judgment.  Dkt. No. 9.  On April 5, 2015, an attorney named Xiao Bing Xu entered an appearance on behalf of ESR and SGR.  Dkt. No. 10.  The following day, ESR and SGR filed a motion to set aside entry of default and to dismiss the First Amended Complaint for lack of jurisdiction.  Dkt. No. 11.  On May 15, 2015, ESR and SGR substituted Michael Farhi as their counsel of record.  Dkt. No. 18.  On July 28, 2015, following oral argument, the Court vacated default, denied the motion for default judgment, denied the motion to dismiss without prejudice, directed Plaintiff to file a Second Amended Complaint by August 4, 2015, and ordered discovery on the issue of personal jurisdiction.  Dkt. No. 27.

On August 3, 2015, Plaintiff filed a Second Amended Complaint which, among other things, added claims against Defendant ES.  The Second Amended Complaint contained five counts against Defendants: (1) breach of contract; (2) tort claims for negligence, conversion, and harm to business; (3) breach of the implied covenant of good faith and fair dealing; (4) fraud and misrepresentation; and (5) overpayment.  On August 25, 2015, Defendants filed an Answer to the Second Amended Complaint.  Dkt. No. 31.

4

On November 5, 2015, Defendants' attorney filed a motion to be relieved as counsel, which the Court granted on December 2, 2015. Dkt. Nos. 37-38. On January 12, 2016, due to Defendants' failure to obtain new counsel or otherwise communicate with the Court, Magistrate Judge Leda D. Wettre issued an Order to Show Cause directing Defendants to show cause as to why their Answer should not be stricken and default entered against them. Dkt. No. 39. On April 13, 2016, Magistrate Wettre issued a Report and Recommendation that Defendants' Answer be stricken and default entered against them. Dkt. No. 43. On May 4, 2016, for the reasons set forth in Magistrate Judge Wettre's Report and Recommendation, the Court struck Defendants' Answer, ordered that the Clerk enter default against Defendants, and directed Plaintiff to move for default judgment against Defendants by May 30, 2016. Dkt. No. 44.

On May 10, 2016, TMG filed a motion for default judgment against Defendants. Dkt. No. 45. On December 22, 2016, the Court denied TMG's motion without prejudice because it had not filed a brief or statement that no brief is necessary, and failed to provide proof of service of the Second Amended Complaint on Defendants. Dkt. No. 46. On January 6, 2017, TMG filed a renewed motion for default judgment against Defendants, as well as an affidavit describing service of the Second Amended Complaint. Dkt. Nos. 47-48. The motion is unopposed.

## II. LEGAL STANDARD

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008). Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether

the plaintiff has proved damages. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

In addition, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

## III. ANALYSIS

### A. Jurisdiction & Service

#### 1. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over Defendants by virtue of diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and there is an amount in controversy exceeding $75,000. See SAC ¶¶ 1-4, 7.

#### 2. Personal Jurisdiction

As here, "[w]here the district court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction." Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010). TMG has met its burden to establish a prima facie case of personal jurisdiction over Defendants.

Because New Jersey's long-arm statute permits the exercise of personal jurisdiction to the fullest extent permitted under the United States Constitution, a district court sitting in New Jersey

6

may exercise personal jurisdiction over a non-resident defendant so long as the defendant has "'certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011)). Personal jurisdiction may be either general or specific. General personal jurisdiction permits a court to exercise jurisdiction over a defendant for all claims that arise against it, and exists when the defendant's contacts with the forum are "so continuous and systematic as to render them essentially at home in the forum State." Id. at 754. Specific personal jurisdiction arises when the defendant's forum-related activities gave rise to the plaintiff's cause of action, and permits the court to exercise jurisdiction only over those specific claims. Id.

The Court cannot exercise general personal jurisdiction over Defendants. However, the Court is satisfied that the allegations in the SAC, taken as true, establish a prima facie case of specific personal jurisdiction. TMG alleges both that Defendants purposefully directed their activities to New Jersey, and that these activities gave rise to TMG's instant claims. TMG is exclusively located in New Jersey; Defendants sent communications to TMG's New Jersey office to solicit business from TMG; the Purchase Orders that Defendants allegedly breached were prepared by TMG in its New Jersey office and sent electronically from New Jersey to Defendants; Defendants and their employees frequently called and emailed TMG's New Jersey office to discuss issues relating to the underlying transactions; Defendants purchased product from scrapyards in New Jersey for at least two of the underlying transactions; Defendants utilized a freight forwarding company located in New Jersey to transport much, if not all, of the product at issue; Defendants sent communications and documents to TMG's New Jersey office that now form the basis for TMG's fraud claims; and TMG suffered harm in New Jersey. See SAC ¶¶ 1, 8, 11, 16, 19, 20;

7

First Count ¶ 2; Fourth Count ¶¶ 2, 7. These allegations are sufficient to establish a prima facie case of specific jurisdiction over Defendants for the instant claims, and demonstrate that this Court's exercise of jurisdiction over Defendants would not offend due process. See, e.g., TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, No. 12-3355, 2016 WL 5660426, at *2 (D.N.J. Sept. 29, 2016); Fed. Ins. Co. v. Secure Cargo Corp., No. 12-851, 2013 WL 1222653, at *2 (D.N.J. Mar. 25, 2013).[3]

3. Service of Process

TMG has demonstrated proper service of the Second Amended Complaint on Defendants ESR and SGR, but not ES.

TMG argues that all Defendants were served with the SAC when it was electronically filed on August 3, 2015. See Affidavit of Service, Dkt. No. 47; Pl.'s Br. at 3-4. Federal Rule of Civil Procedure 5, which carries less stringent service requirements than Federal Rule of Civil Procedure 4, generally governs the service of amended complaints. See Fed. R. Civ. P. 5(a)(1)(B). Under Rule 5, if a party has already been served with a prior summons and complaint and has entered an appearance in the case, an amended complaint may be served electronically on the party's attorney of record. Louisiana Counseling & Family Servs. Inc. v. Mt. Fuji Japanese Rest., No. 08-6143, 2012 WL 4049937, at *6 (D.N.J. Aug. 9, 2012) (analyzing the relevant Federal and Local Rules). Yet if an amended complaint asserts claims against a new party, the plaintiff must serve the new party with a summons and the amended complaint in compliance with Rule 4. See, e.g., 4B Charles

---

[3] The Court notes that although Defendants previously raised the issue of personal jurisdiction, their motion to dismiss for lack of personal jurisdiction was denied without prejudice, and they violated the Court's July 25, 2015 Order by refusing to engage in jurisdictional discovery and failing to file a renewed motion to dismiss. As a sanction for these failures and their refusal to otherwise defend this case, Defendants' Answer was stricken and default entered against them. Defendants had ample opportunity to oppose the Court's exercise of personal jurisdiction over them, and may not avoid the entry of judgment by simply refusing to defend this case.

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1146 (4th ed.) ("The service provisions of Rule 5 apply only to parties who have appeared. Thus it is clear that amended or supplemental pleadings must be served on parties who have not yet appeared in the action in conformity with Rule 4."); Kaden v. Chamisa Arts, Inc., No. 15-146, 2016 WL 7616692, at *3 (W.D. Tex. July 15, 2016) (holding that "if an amended complaint names a new defendant, the plaintiff must serve that defendant with the summons and amended complaint in compliance with Rule 4"); Little v. Mun. Corp., 51 F. Supp. 3d 473, 485 (S.D.N.Y. 2014) (same); Kermode v. Univ. of Mississippi Med. Ctr., No. 09-584, 2011 WL 2619096, at *1 (S.D. Miss. July 1, 2011) (same).

Here, at the time the SAC was filed, Defendants ESR and SGR had been served with a prior complaint, had entered an appearance in the case, and were represented by counsel. See Eichhorn Cert. Exs. A-B, Dkt. No. 7-1 (providing proof of service of the First Amended Complaint on authorized representatives of ESR and SGR); Dkt. Nos. 18, 38 (showing that Michael Farhi, Esq. entered an appearance on behalf of ESR and SGR on May 15, 2015, and did not withdraw as counsel until December 2, 2015). Thus, TMG has established that service of the SAC was effectuated on ESR and SGR.

However, electronic filing of the SAC was not sufficient to serve Defendant ES. Because ES was not named as a party prior to the SAC, Plaintiff was required to serve ES with a summons and the SAC in compliance with Rule 4. TMG has not provided any evidence that ES was served in accordance with Rule 4. Accordingly, the Court will not enter default judgment against Defendant ES at this time.

### B. Liability

As Defendants' Answer has been struck and they have not otherwise responded to the SAC, the Court must accept the truthfulness of TMG's well pled allegations as to liability. The Court is satisfied that TMG has adequately pled claims against Defendants for breach of contract.[4]

To state a claim for breach of contract in New Jersey, a plaintiff must allege: (1) the existence of a valid contract between the parties; (2) that defendant breached the contract; and (3) that plaintiff suffered damages due to the breach. See AT & T Credit Corp. v. Zurich Data Corp., 37 F. Supp. 2d 367, 370 (D.N.J. 1999). TMG has alleged that: (1) there was a contractual relationship between TMG and Defendants based on the eighteen Purchase Orders and Invoices between October 15, 2013 and June 4, 2014, as well as Purchase Orders and Invoices between May 2014 and June 2014, see SAC, First Count ¶¶ 2-4, Fifth Count ¶¶ 2-3; Lee Cert. ¶¶ 5-7, 27-28, Dkt. No. 48-1; (2) Defendants breached the aforementioned contracts by providing product with impermissible levels of impurities, sending less product than TMG paid for, and failing to return overpayment on numerous Invoices, see SAC, First Count ¶¶ 5-9, 11-12, Fifth Count ¶¶ 4-6; Lee Cert. ¶¶ 8-13, 29-30; and (3) TMG suffered damages as a result of the breach, see SAC, First Count ¶¶ 10-13, Fifth Count ¶¶ 4-7; Lee Cert. ¶¶ 13-16, 30-32; see also Pl.'s Br. at 5-7, 9-10, Dkt. No. 48-2 (setting forth Defendants' breaches of contract).[5] In further support of its breach of contract claims, TMG attaches the relevant Purchase Orders, Invoices, and claims submitted to

---

[4] As the Court holds that TMG has established a valid cause of action for breach of contract, the Court need not assess TMG's alternative theories of liability.

[5] TMG also alleges that Defendants breached the parties' contracts by providing product that improperly contained oil, which caused damage to a third party container owner. See SAC, First Count ¶ 10. Although TMG may have been required to remit payment for the container damage, it does not provide the Court with any contractual provision requiring Defendants to indemnify TMG for any damages suffered by third parties, or any other sufficient explanation for why Defendants should be held liable for such damages. Therefore, default judgment will be denied as to this claim.

Defendants. See Lee Cert. Exs. A, B. The Court holds that TMG has sufficiently alleged numerous breaches of contract by Defendants.

### C. Appropriateness of Default Judgment

Next, the Court must consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. Given the fact that Defendants' Answer was struck and default was entered against them due to their failure to defend, and based upon the facts alleged in the SAC, the Court concludes that Defendants do not have a meritorious defense. See Colony Ins. Co. v. Kwasnik, Kanowitz & Assocs., P.C., No. 12-00722, 2014 WL 2920810, at *6 (D.N.J. June 27, 2014) (holding that where the defendant's answer was struck for failing to comply with a court order, he was "effectively in the same position as if he never answered [the] complaint, and therefore [was] deemed to have admitted every well-pleaded allegation in the Complaint"). Second, the Court finds that TMG will suffer prejudice absent entry of default judgment as it would have no other means of obtaining relief. Finally, the Court finds that ESR and SGR acted culpably as they have been served with the SAC, refused to obtain new counsel or otherwise defend in this case, are not infants or otherwise incompetent, and are not presently engaged in military service. See Eichhorn Cert. ¶ 14, Dkt. No. 48-3 ("Eichhorn Cert"); Affidavit of Service, Dkt. No. 47; Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

### D. Monetary Damages

TMG has requested a default judgment in the total amount of $149,229.97. Eichhorn Cert. ¶ 17. This amount consists of $122,972.30 stemming from Defendants' alleged breaches of

eighteen Purchase Orders and Invoices between October 15, 2013 and June 4, 2014, and $26,257.67 for TMG's overpayments between May 2014 and June 2014. See Lee Cert. ¶¶ 16, 32. In support of its claim, TMG submitted a brief and affidavit setting forth the bases for the requested damages, as well as the Purchase Orders, invoices, and submitted claims to back up these demands. See Pl.'s Br. at 5-7, 9-10, 14; Lee Cert ¶¶ 5-16, 27-32; id. Exs. A, B.

The Court has reviewed these documents and holds that with the exception of TMG's claims relating to amounts paid for damage to third party shipping containers, see infra at 10 n.5, TMG has met its burden to prove that it is entitled to the requested damages. Therefore, the Court will subtract $1,635.80, the amount pertaining to the shipping container damage, from TMG's requested damages of $149,229.97, and will enter a judgment against Defendants ESR and SGR in the amount of $147,594.17.[6]

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff TMG's revised motion for default judgment, Dkt. No. 48, is **GRANTED** in part and **DENIED** in part without prejudice, and judgment shall be entered against Defendants ESR and SGR in the amount of $147,594.17. An appropriate Order accompanies this Opinion.

**Dated: May 9, 2017**

                                         */s Madeline Cox Arleo*
                                         **Hon. Madeline Cox Arleo**
                                         **United States District Judge**

---

[6] Although TMG also conclusorily requests "interest and costs" in its attorney certification, see Eichhorn Cert. ¶ 17, it has not set forth any basis for this request. Therefore, interest and costs will not be awarded.